1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BARBARA MAY,

                Plaintiff,

        v.

HONEYWELL INTERNATIONAL, INC., a
foreign corporation, et al.,

            Defendants.

CASE NO. C05-1957RSM

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT

This matter is before the Court for consideration of defendants' motion for summary judgment, Dkt. # 65. Plaintiff has opposed the motion and requested oral argument. The Court deems it unnecessary to hear oral argument on this motion and, for the reasons set forth below, shall grant the motion.

FACTUAL BACKGROUND

Plaintiff Barbara May filed this action seeking an award of benefits under her former employer's short-term and long-term disability plans, as well as other relief. Defendant Honeywell is her former employer, and defendant Metropolitan Life Insurance Company ("MetLife") is the insurer for the long-term disability plan. Plaintiff has asserted six claims against defendants, all arising from the denial of benefits under the short-term ("STD") and long-term ("LTD") disability plans. These claims arise from the following facts, which are not in dispute.

Defendant Honeywell is in the business of manufacturing products for the aerospace and automotive industries, control technologies for homes and other buildings, and other products. Honeywell provides an array of benefits plans to its employees, including the STD and LTD plans at issue here. The STD plan is an extended sick-leave plan; it is not an insurance plan nor is it funded by

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 1

insurance.  Benefits are available for up to twenty-six weeks of disability, and are paid to employees out of general assets.  Defendant Metropolitan Life ("MetLife") is the claims administrator for the STD program.   The LTD is an insured disability plan for which employees pay premiums.  Defendant MetLife is the insurer and the claims administrator on the LTD plan.

Plaintiff was an employee of Honeywell for thirty-two years, most recently as an assembler.  She began experiencing pain in her back, legs, arms, and neck, around 1990, and in 2000 she consulted rheumatologist Richard Neiman, M.D.   In October 2004, plaintiff had knee surgery and received STD benefits for a period of two weeks afterward.  Declaration of Constance Hanna, p. 6,7.  She was cleared to return to work on October 28, 2004.  Plaintiff's surgeon reported in a Physical Capacities Evaluation ("PCE") that plaintiff could stand and walk for an hour, sit for five to eight hours, and lift up to ten pounds occasionally.  *Id.*, p. 8.

Just over two months later, on January 7, 2005, plaintiff began an extended absence from work, and she asked to be placed on medical leave as of that date.  Debbie Fuller, RN, a nurse employed by Honeywell, approved the leave as Family Medical Leave Act ("FMLA") leave for the period January 7 through January 21, 2005.  Declaration of Constance Hanna, p. 9, 10.  Nurse Fuller advised plaintiff that as the absence from work would exceed five days, she needed to file a claim with MetLife for STD.  *Id*. Nurse Fuller also sent plaintiff a packet of benefits information, and a PCE form that plaintiff's doctor should fill out and return no later than January 24, 2005.  *Id*.

On January 17, 2005, Dr. Neiman sent a letter (by fax) to Debbie Fuller, stating that

Barbara May has severe fibromyalgia.  She has diffuse pain throughout her body.  She has difficulty sitting or standing for any length of time.  An MRI of her LS-spine has revealed multilevel degenerative disk and joint disease.  She also is felt to possibly have spinal stenosis.  We are considering a repeat MRI of her LS-spine to see whether a surgical approach might be helpful.  We are also considering an MRI of her C-spine looking for nerve impingement there with a Budd-Chiari problem which might respond to surgery as well.

At this point, she wants to continue with acupuncture.

Declaration of Heidi Alessi, p. 64.

On January 18, 2005, plaintiff submitted a claim for STD benefits to MetLife.  On January 24, 2005, Dr. Neiman filled out and signed an "Initial Functional Assessment" form.  He gave plaintiff's

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 2

1  primary diagnosis as fibromyalgia, her secondary diagnosis as degenerative joint disease, and her

2  estimated date for return to work as "undetermined.". *Id.*, p. 65.  He stated that he advised plaintiff to

3  avoid standing or reclining, and had referred her to an acupuncturist. *Id.*, p. 66.  By check-off marks on

4  the form, he indicated that plaintiff could never lift or carry any weight, and could never push/pull, bend,

5  climb, crawl, or squat.  She could sit, drive, stand, and walk "occasionally", up to 33% of the time.  *Id*.  It

6  is not clear from the record, or from either party's recitation of the facts, when this form was actually

7  received by MetLife.  It is not mentioned in the claim file narrative until the post-denial summary, written

8  January 31, 2005.   Declaration of Cindy Broadwater, p. 22-24.

9         On January 21, 2005, MetLife began contacting Dr. Neiman's office to request further

10  information.  *Id*.  Several telephone calls were made over the next several days; one faxed request was

11  lost in transmission.  *Id*.  MetLife told Dr. Neiman's office that the medical information was needed by

12  January 27, 2005 to complete the claim.  *Id*.  By fax sent on January 26, MetLife requested a functional

13  assessment form, and clinical documentation including notes from the last two office visits, test results,

14  including MRI and X-rays reports, treatment plans, and an estimated return-to-work date. *Id.*, p. 23.

15  On January 27, MetLife called and left a message at Dr. Neiman's office saying they were looking for

16  "objective clinical findings to support a fucntional [sic] limitation." *Id*.

17        In an initial assessment made later in the day on January 27, MetLife determined that the claim for

18  STD should be denied.  The documentation that was considered in making this determination included

19  the January 17 letter from Dr. Neiman, set forth in full above, and an undated[1] physical capacities

20  evaluation, also signed by Dr. Neiman.  In this evaluation, Dr. Neiman stated that plaintiff had **no**

21  capacity whatsoever to stand or walk, sit, or lift and carry; and she could not perform any repetitive

22  motions with her hands at all, and could never bend, climb, stoop, kneel, or reach.  *Id*. at p. 31.

23        A January 31, 2005, summary in the claim file states,

24  Decision summary for inclusion in the denial letter.  This decision is based on review of
   the medical information received, from your treating provider, Richard Neiman, MD.

25  Medical documentation received and reviewed: * Attending physician's statement from

26  _____

27  [1]The claim file describes this PCE as dated January 7, 2005.  However, that date is given on the
   form as the date of injury.  The date for "today's date," meaning the date the form was signed, is blank.

28  Declaration of Cindy Broadwater, p. 31.

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 3

Dr. Neiman dated 1/24/2005. * Office visit notes from Dr. Neiman dated 12/7/2004 and 1/17/2005. * Lumbar spine MRI report dated 3/5/2002. * Physical capacity evaluation from Dr. Neiman dated 1/7/2005. Per the documentation, you went out of work on 1/7/2005 due to your complaints of pain. The MRI done in 2002 indicates that you have degenerative disk and joint disease, but no disc extrusion or herniation. The office visit notes of 12/7/2004 and 1/17/2004 [sic] do not document any clinical findings to support that you are unable to perform the functions of you [sic] sedentary job as an assembler. Therefore, based on the medical received and reviewed, we are unable to approve your claim for short-term disability.

*Id.* at 22. Plaintiff appealed the denial of her claim, but following review of the file by medical consultant Dennis Gordon, M.D., the denial was sustained. The file was also reviewed by Honeywell's medical director Constance Hanna, M.D. Dr. Hanna agreed with MetLife's conclusion. Honeywell offered accommodation to plaintiff in the form of adjustments to her workstation and frequent rest breaks, but she maintained that she could not perform any aspect of her job or any job.

After final denial of her claim for STD benefits, plaintiff met with Honeywell Human Resources specialists to discuss her options. Declaration of Barbara May, Dkt. # 29, ¶ 8-9. They advised her that she had three options: to return to work for one day and be laid off so she could collect unemployment; to return to work for one day and quit, in which case Honeywell would not contest her eligibility for unemployment benefits; or retire early and begin collecting her pension. *Id.* Plaintiff, who would turn sixty in April 2005, chose the latter option. The Human Resources specialists did not at that time advise her that she could apply for LTD benefits. However, during the deposition of Kathleen Oberlin, disability case manager for MetLife, plaintiff was advised by Ms. Oberlin that she could still apply for LTD. Plaintiff did in fact apply, but her application was denied because her premium payments on the LTD policy were not then current. *See*, Order Denying Motion for Partial Summary Judgment, p. 3. As of the date of the last briefing in this matter, plaintiff had not appealed that denial.

On these facts, plaintiff has stated six claims for relief: (1) breach of contract; (2) violation of the Washington Consumer Protection Act, RCW 19.86, and the Washington Insurance Code, RCW 48.30.040; (3) failure to accommodate plaintiff's disability, in violation of the Washington Law Against Discrimination, RCW 49.60; (4) failure to pay wages, in violation of RCW 49.52.050; (5) interference with plaintiff's rights protected under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140; (6) and violation of the terms of the LTD plan and denial of rights under

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 4

1   that plan.  Second Amended Complaint, ¶¶4.1 through 4.6.  Defendants have moved for summary

2   judgment on all claims.   Plaintiff has opposed the motion.

3                                                    DISCUSSION

4          Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and

5   admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

6   material fact and that the moving party is entitled to judgment as a matter of law."  F.R.Civ. P. 56(c).

7   The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial by

8   "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on

9   file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of

10  material fact." *Celotrex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   If the moving party satisfies this

11  burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial.

12  F.R.Civ. P. 56(e).  However, no defense to an insufficient showing is required.  *Neely v. St. Paul Fire*

13  *and Marine Insurance Co.,* 584 F.2d 341, 344 (9th Cir. 1978).

14         A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could

15  return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

16  If the evidence is merely colorable or is not significantly probative, summary judgment may not be

17  granted.  *Id*. at 249-50.   It is not the court's function at the summary judgment stage to determine

18  credibility or to decide the truth of the matter.  *Id*.  Rather, "the evidence of the non-movant is to be

19  believed, and all justifiable inferences are to be drawn in [her] favor."  *Id*.   at 255.

20      **1. Breach of Contract Claim**

21         Plaintiff asserts that she was eligible to receive STD benefits from January 7, 2005 for a period of

22  twenty-six weeks, and that "defendants' denial of those benefits was a breach of contract."  Second

23  Amended Complaint, ¶ 4.1.   Defendants move to dismiss this claim on the basis that there is no contract

24  to provide STD benefits between plaintiff and either defendant.  In opposing summary judgment, plaintiff

25  has argued her claim with respect to defendant Honeywell only: she asserts that "Honeywell's promise to

26  provide salary continuation is an enforceable contract."  Plaintiff's Response,  p. 19.  Throughout her

27  argument on the contract claim, she refers only to the acts of Honeywell, and at no time asserts any basis

28

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 5

1  for a contract between her and defendant MetLife, or any promise made by MetLife to her.  *Id.*, pp. 19-

2  21.  Thus, despite the use of the plural form in ¶ 4.1 of the complaint, plaintiff has asserted this breach of

3  contract claim against defendant Honeywell alone.

4       In arguing against the contract claim, Honeywell points first to language in the STD plan itself,

5  stating that "[t]he Plan shall not be deemed to constitute a contract between an Eligible Employee and

6  any Employer."  Dkt. # 48, Exhibit 3, pp. 22-23.  Plaintiff asserts that she did not receive a copy of this

7  STP Plan; she only received a copy of the summary, a document entitled "Honeywell Managed Disability

8  Plan."  Declaration of Barbara May, Dkt. # 29, ¶ 5.  However, nowhere does she deny that she also

9  received a copy of the employee handbook, titled "Redmond Employee Guidelines." ("Handbook")  Dkt.

10  # 48, Exhibit 23, attachment.  This Handbook states, in the opening paragraph, that "neither this

11  handbook, nor any Company policy, procedure or practice referenced here, is intended to create a

12  contract of employment between the Company and you or to alter the nature of your employment-at-

13  will."  *Id.*, p. 2.  The Handbook continues, in the same paragraph, to state that Honeywell "retains the

14  right to revise this handbook at any time, without notice."  *Id.*  Later, under "Attendance and

15  Punctuality," the Handbook states, "If you are absent for more than seven consecutive days due to illness

16  or injury . . .  you **may** be eligible for Short-Term Disability benefits and should contact the Medical

17  Department at 425-885-8285."  *Id.*, p. 4 (emphasis added).   Later still, under the heading "Disability,"

18  the Handbook states,

19       All employees receive information on the Managed Disability program upon hire.  This document
         is very important to retain because if you are out because of injury or illness
20       lasting more than 7 consecutive calendar days (beginning with your first day of absence
         from work.), you **may** be eligible for payroll benefits for up to 26 weeks.
21

22  *Id.*, p. 6 (emphasis added).

23       In Washington, an "at-will" employment state, an employer contractually binds itself to its

24  employees only if the requisites of contract formation—mutual intent, offer, acceptance and

25  consideration—are all met.  *Bulman v. Safeway, Inc.*, 144 Wash. 2d 335, 351 (2001); *citing Swanson v.*

26  *Liquid Air Corp.*, 118 Wash. 2d 512, 522 (1992) and *Thompson v. St. Regis Paper Co.*, 102 Wash. 2d

27  219, 233 (1984).  The employer must "objectively manifest[]" an intent to be bound to the contract.

28  *Thompson*, 102 Wash. 2d at 230.  Here, the Handbook objectively manifests no intent to create an

1    employer-employee contract, but rather states the opposite.  Handbook, p. 2.  Further, where an

2    employer specifically retains the right to modify its policies, and retains discretion to administer them,

3    there can be no enforceable contract.  *Thompson*, 102 Wash. 2d at 231.  The policies stated in the

4    Handbook here are both discretionary and modifiable, and thus cannot create an enforceable contract.  *Id.*

5

6         Plaintiff argues that this is not a "handbook" claim within the *Thompson-Bulman* line of cases,

7    because those addressed termination, not benefits.  Plaintiff's Opposition, p. 20.   Plaintiff asserts that the

8    Honeywell disability program is an insurance contract that is  "unilateral, executory, conditional and

9    aleatory in nature," which created an expectation of payment upon certain "determinable conditions."  *Id.*

10   at p. 20.  The insurance aspect of the STD programs will be addressed below.  As to the contract

11   argument, plaintiff has cited no Washington authority for her argument that this is not a "handbook" case

12   and not governed by the *Thompson-Bulman* line of cases.  The Washington Supreme Court stated in

13   *Thompson* that employers "can contractually obligate themselves concerning provisions found in an

14   employee policy manual and thereby contractually modify the terminable at will relationship."  *Thompson*,

15   102 Wash. 2d at 229.  The context in which this sentence appears, as well as the "and thereby" language,

16   indicates that the reach of the rule extends more broadly than termination, to cover any aspect of the

17   employer-employee relation covered in a handbook or policy manual.   The "handbook" analysis thus

18   applies to plaintiff's contract claim.

19        The *Thompson* court also noted that "the requisites of contract formation, offer, acceptance and

20   consideration are necessary predicates to establishing that policies in an employment manual are part of

21   the employees' original employment contract or part of the employment contract as modified by the

22   parties."  *Id.* at 228.  Plaintiff has pointed to no language in the Handbook to support her assertion that

23   STD benefits were promised to her or to any employee.  The language in the Handbook, as well as in the

24   Honeywell Managed Disability Plan summary, on which she relies, is clearly discretionary and

25   conditional.   Thus, the brochure states that benefits may be provided "during a period of **approved**

26   disability."  Managed Disability Plan Information Guide, Dkt. # 48, Exhibit 1, p. 2 (emphasis added).  The

27   guide directs the employee to review it carefully to "learn about the process you must follow to **be**

28

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 7

1  **eligible for consideration** for STD benefits . . . " *Id.* (emphasis added).  Further, the guide states that

2  the MetLife Disability Case Manager will use "pre-approved guidelines and standards to determine

3  **whether or not to approve** your request for STD benefits.  **If** your request is approved, the [case

4  manager] will also determine the period of time during which you may take an eligible disability leave of

5  absence . . .  " *Id.*, p. 3 (emphasis added).

6       The Washington courts have stated unequivocally that no contract exists "in the absence of a

7  sufficiently specific contractual promise." *Bulman*, 144 Wash. 2d at 352.  Promises by an employer are

8  enforceable only if they promise "specific treatment in specific situations." *Thompson*, 102 Wash. 2d at

9  230.  The language quoted above offers no specific contractual promise of benefits, but only the

10  possibility of approval if the employee is deemed by MetLife to be eligible under the standards set by

11  MetLife.   There is no "unilateral objective manifestation of intent" to create a contract for the STD

12  benefits; instead there is a specific disclaimer of contract. *Thompson*, 102 Wn. 2d at 230;  Dkt. # 48,

13  Exhibit 23, p. 2.

14       Plaintiff also contends that she offered consideration for a contract, in the form of her continued

15  employment for thirty-two years.  However, loyal service alone does not constitute consideration for a

16  contract.  Under Washington law, when an employee seeks to prove a contract, he or she must point to

17  "consideration in addition to required services which results in a detriment to the employee and a benefit

18  to the employer." *Robert v. Atlantic Richfield Co.*, 88 Wash. 2d 887, 895 (1977).  The Washington

19  Supreme Court specifically rejected longevity of service as sufficient consideration to establish a contract.

20  *Id*.

21       In light of the Handbook language indicating the discretionary nature of the benefits, and

22  Honeywell's retention of the right to modify them, it cannot be said that plaintiff had a contractual right

23  to any STD benefits.   Nor has plaintiff demonstrated any consideration that she gave for a contract to

24  receive STD benefits.  In the absence of a contract for STD benefits, there can be no breach.

25  Accordingly, the Court finds no merit to her breach of contract claim.  Defendants' motion for summary

26  judgment shall be granted as to this claim.

27       **2.  Washington Insurance Code and Consumer Protection Act Claim**

28

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 8

1    Plaintiff alleges in this claim that "Defendants' wrongful acts and omissions regarding plaintiff's

2  claim for short-term disability benefits violated the Washington Consumer Protection Act, RCW 19.86;

3  the Washington Insurance Code, RCW 48.30.040; and the Unfair Claims Settlement Practices provisions

4  of the Washington Administrative Code."  Second Amended Complaint, ¶ 4.4.  Defendants move for

5  summary judgment on this claim on the two bases that (a) the Washington insurance statutes do not apply

6  to the STD plan because it is not insurance, and (b) plaintiff cannot prove the elements of a Consumer

7  Protection Act ("CPA") claim.

8    As to application of the Washington Insurance Code, defendant asserts that under Washington

9  law, an "in-house program for the sole benefit of . . . employees" is not insurance, and the employer is not

10  subject to the provisions of the insurance code.  *Hepler v. CBS, Inc.*, 39 Wash. App. 838, 846 n. 2

11  (1985).  Plaintiff has not refuted defendants' assertion in any way.  Instead, plaintiff argues that the STD

12  plan falls within the reach of RCW 48.11.030, which defines disability insurance, because the STD plan

13  indemnifies employees against economic loss.  However, there is nothing in the language of that

14  definition that includes an extended sick leave program such as the Honeywell STD plan.   Further, the

15  definition of a "group disability plan" requires that it be "provided by a master policy issued to an

16  employer."  RCW 48.21.010.   Here, there is no insurance policy issued to Honeywell for the STD plan;

17  it is simply an in-house benefit program funded by the company itself.  It therefore falls within the *Hepler*

18  rule, and is not subject to the Washington Insurance Code.

19    Next, defendant contends that in the absence of a *per se* violation of the CPA by way of the

20  insurance code, plaintiff cannot separately prove the elements of a CPA claim.   Those elements are as

21  follows: (1) the action complained of is an unfair or deceptive act or practice;  (2) the action occurred in

22  the conduct of trade or commerce; (3) there is a public interest component to the conduct; (4) there was

23  injury to the plaintiff's business or property;  and  (5) there is a causal link between the unfair act and the

24  injury suffered.  *Nordstrom, Inc., v. Tampourlos*, 107 Wash. 2d 735, 739 (1987); citing *Hangman Ridge*

25  *Training Stables, Inc., v. Safeco Title Insurance Co.*, 106 Wash. 2d 778, 780 (1986).

26    Plaintiff alleges three types of deceptive acts or misrepresentations: she contends that MetLife

27  misrepresented Dr. Gordon as an independent physician consultant; Dr. Gordon misrepresented the

28

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 9

1    extent of his file review; and MetLife failed to conduct a reasonable investigation of plaintiff's claim.  Her

2    contentions regarding Dr. Gordon are factually incorrect.  Dr. Gordon is an independent contractor who

3    has his own clinical practice, and does work on a contract basis for MetLife.  Gordon Deposition, pp. 9,

4    11.  The fact that he may have a financial interest in conducting future file examinations for MetLife does

5    not support an inference of his dishonesty or bad faith.  *Koch v. Mutual of Enumclaw*, 108 Wash. App.

6    500, 508 (2001).  Further, the fact that he did not specifically address in writing every item or document

7    in plaintiff's file does not mean that he did not review them.  His report states that he did review the file,

8    and found it "vague and/or incomplete."  Declaration of Cindy Broadwater, p. 48.  His failure to mention

9    specific items in the file, such as plaintiff's Diary Review and a letter, does not support a conclusion that

10    he made a misrepresentation within the meaning of the CPA.  Finally, as for the reasonableness of

11    MetLife's investigation of the claim, the Court finds from the evidence presented that the investigation of

12    plaintiff's STD claim was reasonable, given the medical evidence presented by plaintiff and her physician,

13    and does not constitute any "unfair or deceptive act" within the meaning of the CPA.

14            Nor can plaintiff demonstrate a public interest component to her CPA claim as required.   The

15    unfair or deceptive act must be one which "had the capacity to deceive a substantial portion of the

16    public."  *Hangman Ridge Training Stables,* 105 Wash. 2d at 785.   A private dispute which affects only

17    the parties is not an act or practice affecting the public interest.   *Id*. at 790.   Even if the Court were to

18    accept plaintiff's contention that defendants' acts may potentially affect all of Honeywell's 1,775

19    Washington employees, that number does not represent "a substantial portion" of the public; it is less than

20    one-tenth of one percent of the state's population.  Moreover, the number of Honeywell employees who

21    might actually be affected is not 1,775 but a small portion of that number who submit claims under the

22    STD plan.   This is not a substantial portion of the public and cannot support a CPA claim.

23            Plaintiff's allegations of a CPA claim are without merit because she has not set forth facts which

24    could  satisfy all the necessary elements of the claim under *Hangman Ridge*.   Defendants' motion for

25    summary judgment on this claim shall  accordingly be granted.

26        **3. Wage Act Claim**

27            Plaintiff contends that defendant Honeywell's failure to pay her wages violated RCW 49.52.050

28

"and other law," and that she is therefore entitled to damages under the statute.  Second Amended Complaint, ¶ 4.6.  This claim apparently arises from defendants' characterization of the STD program as a salary continuation plan or payroll practice as defined in the ERISA exemption under 29 C.F.R.§ 2510.3-1(B)(2).  Plaintiff's Response, p. 27.  Plaintiff contends that the fact that her October 2004 disability leave benefits were included in her wages on her 2004 W-2 form means that leave benefits are wages.  *Id.*  She argues that her right to those wages vested once she was prevented from working by her disability, and that defendants' violated the state wage statutes by failing to pay her wages due.  *Id.*

Under Washington law, sick leave or disability leave is a contingent benefit—payment is contingent upon the employee becoming ill or disabled.  The term "wages" does not include "the cash value of contingent benefits such as the right to sick leave."  *Teamsters Local 117 v. Northwest Beverages, Inc.*, 95 Wash. App. 767, 769 (1999).   The *Teamsters* court specifically noted that there is no legislative purpose to convert contingent benefits into wages due in the Washington wage statutes, RCW 49.48 or RCW 49.46.  *Id.*  The same court distinguished the case upon which plaintiff relies for her argument, *Naches Valley School District v. Cruzen,*  54 Wash. App. 388 (1989), by noting that the Collective Bargaining Agreement ("CBA") in *Cruzen* gave employees the right to cash out accrued sick leave after termination.  *Id.*, *citing Naches Valley School District,* 54 Wash. App. at 398-399.   In *Teamsters* there was no such provision in the CBA, and that became dispositive of the issue.

As plaintiff has pointed to no CBA provision giving her a right to be paid for her accrued sick leave, this case is governed by the *Teamsters* ruling that "the statutory right to wages due upon termination of employment does not create a substantive right to be paid for accrued sick leave."  *Id.*  at 769-770.  The STD benefits sought here are not "wages" under the Washington wage statutes cited by plaintiff in her claim.  Her wage claim is thus without merit.  Defendants' motion for summary judgment as to this claim shall be granted.

### 4.  Washington Law Against Discrimination Claim

Plaintiff alleges that defendant Honeywell failed to accommodate her disability, and discriminated against her on the basis of disability, in violation of the Washington Law Against Discrimination, RCW 49.60 ("WLAD").  Second Amended Complaint, ¶ 4.5.  Her claim encompasses both a "failure to

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 11

1  accommodate" claim, and a claim of disparate treatment for her fibromyalgia.   Plaintiff's Response, p.

2  30.   Defendants have moved for summary judgment on both aspects of the claim.

3       Under Washington law, it is an unfair practice for an employer to refuse to hire, to discharge, or

4  to discriminate in compensation on the basis of a person's disability.  RCW 49.60.180.  A disabled

5  employee has a cause of action for at least two different types of discrimination: failure to accommodate,

6  where the employer failed to take steps "reasonably necessary to accommodate the employee's

7  condition," and disparate treatment, where the employer discriminated because of the employee's

8  condition.  *Jane Doe v. Boeing Co.*, 121 Wash. 2d 8, 17 (1993).

9       The elements that an employee must show to proved discrimination based on failure to

10  accommodate are the following: (1) the employee had a physical or mental abnormality  that substantially

11  limited his or her ability to perform the job; (2) the employee was qualified to perform the essential

12  functions of the job in question; (3) the employee gave notice of the abnormality and the accompanying

13  substantial limitations; and (4) the employer failed to affirmatively adopt measures that were available to

14  the employer and medically necessary to accommodate the abnormality.  *Riehl v. Foodmaker, Inc.,* 152

15  Wash. 2d 138, 145 (2004).

16       Defendant Honeywell has moved for summary judgment on this claim on the basis that plaintiff

17  cannot show the second required element.  On the contrary, she repeatedly states that she could **not**

18  perform the essential functions of her job, and she could not work at all.  Declaration of Barbara May,

19  Dkt. # 29, ¶ 8: Deposition of Barbara May, pp. 23, 50, 78, found at Declaration of Heidi Alessi, pp. 5,

20  11, 18.  Plaintiff  "has claimed and continues to claim that she was not able to perform the essential

21  functions of her job, due to sickness."  Answers to Interrogatory # 4, found in Alessi Declaration, p. 87.

22  These statements demonstrate that defendant is correct in asserting that plaintiff cannot prove an essential

23  element of the failure to accommodate claim.

24       In opposing summary judgment, plaintiff has not contested this argument, nor can she retract or

25  change her declarations and sworn statements.   Instead, she contends that defendant failed to comply

26  with the WLAD duty "to determine the nature and extent of the disability."  Plaintiff's Response, p. 31,

27  *citing Goodman v. Boeing Co.* 127 Wash. 2d 401, 409 (1995).   However, the record demonstrates that

28

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 12

Honeywell did consider Dr. Neiman's January 24, 2005 "Initial Functional Assessment" form, and offered accommodation appropriate to the limitations described therein. Declaration of Constance Hanna, M.D., pp. 11-13. Plaintiff was offered frequent position changes, as needed; extra breaks, if needed; an adjustable work bench that would allow standing as well as sitting; a sit/stand stool which would be purchased for her use; and assistance from a co-worker with any lifting that plaintiff might need to do. *Id*. at p. 11. Instead of claiming that these were not the appropriate accommodation, or that other accommodation would allow her to work, plaintiff maintains she could not work at all. That is, according to plaintiff, there was **no** accommodation that would allow her to continue to work. Under these facts, plaintiff cannot demonstrate the required elements for a "failure to accommodate" claim.

In her disparate treatment claim, plaintiff alleges that she was treated differently from other ill or disabled employees because the medical personnel who reviewed her file had a bias against fibromyalgia and did not credit her claim that it is disabling. The Washington courts have adopted the familiar burden shifting *McDonnell Douglas* analysis for WLAD cases. *Hines v. Todd Pacific Shipyards Corporation*, 127 Wash. App. 356, 370-71 (2005); *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this scheme, in the absence of direct evidence of discrimination, a plaintiff may survive a summary judgment motion by presenting evidence of a prima facie case of discrimination. *Riehl*, 152 Wash. 2d at 149. Here, plaintiff's argument on the disparate treatment issue amounts to argument on the medical merit of her disability claim. She has nowhere set forth the elements of a prima facie case of disparate treatment, or set forth facts that would make a prima facie case. In particular, she has not demonstrated that she was qualified to work at her job, an essential element of a prima facie case. *Hines*, 127 Wn. App. at 370. Nor has she attempted to establish a prima facie case in any other way. She has thus failed to set forth a claim of disparate treatment. Accordingly, defendants' motion for summary judgment on the WLAD claim shall be granted.

**5. ERISA Claim under 29 U.S.C. § 1140**

In this claim, plaintiff alleges that defendant MetLife denied her claim for STD benefits "in order to avoid having to later fund plaintiff's benefits under the Long Term Disability Plan. . . . MetLife acted for the purpose of interfering with plaintiff's protected rights under ERISA, in violation of 29 U.S.C. §

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 13

1140." Second Amended Complaint, ¶ 4.2.   This section, ERISA § 510, makes it unlawful for any

person to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary

. . .   for the purpose of interfering with the attainment of any right to which such participant may become

entitled under the plan . . .  " 29 U.S.C. § 1140.

Defendants have moved for summary judgment on this claim on the basis that plaintiff is actually

contesting the denial of her LTD benefits, for which her exclusive remedy lies under ERISA §

502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).   Defendant cites the governing rule that "a suit by a

beneficiary to recover benefits from a covered plan [] falls directly under § 502(a)(1)(B) of ERISA, which

provides an exclusive federal cause of action for resolution of such disputes." *Metropolitan Life*

*Insurance Co. v. Taylor*, 481 U.S. 58, 62-63 (1987).  Defendant quotes authority for the interpretation

that ERISA § 510 "is designed to protect the employment relationship that gives rise to an individual's

benefit rights, not to create an action for 'wrongfully withheld benefits', which is covered by [ERISA §

502(1)]" *Pelosi v. Schwab Capital Markets, L.P.*, 462 F. Supp. 2d 503, 512 (*citations omitted*).

Regardless how a plaintiff may label his or her claims, where § 510 claims "merely duplicate" a claim for

denied benefits under § 502(a)(1), they are properly dismissed.  *Id*. at 514.

In her cursory response to defendant's argument on this claim, plaintiff asserts that her evidence

raises the inference that MetLife denied her STD claim "in order to avoid paying LTD benefits six months

down the road."  Plaintiff's Response, p. 33.  Nowhere does she cite any authority to rebut defendant's

legal argument that § 502(a)(1) provides the exclusive remedy for the denial of her LTD benefits.

Moreover, plaintiff's claim assumes a direct connection between STD benefits and eligibility for LTD

benefits.   As found by the Court previously, in denying plaintiff's motion for partial summary judgment,

plaintiff was not foreclosed from applying for LTD benefits by the denial of her application for SD

benefits.  Dkt. # 64, pp. 3-4.

As there is neither a legal nor a factual basis for plaintiff's ERISA § 510 claim, defendants'

motion to dismiss this claim shall be granted.

### 6. <u>Violation of LTD Plan under ERISA</u>

Finally, plaintiff alleges that in preventing her from receiving LTD benefits, "despite her eligibility

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 14

and continuing eligibility to receive such benefits, defendants violated the terms of the Long-Term Disability Plan and denied plaintiff her rights under that Plan." Second Amended Complaint, ¶ 4.3. Plaintiff seeks "to recover benefits due her under the [LTD] Plan, to enforce her rights under that Plan, and to clarify her rights to future benefits under that Plan." *Id.* Although the statutory basis for this claim has not been stated, the parties have treated it as one brought under ERISA § 502(a)(1)(A) to recover benefits due under a plan.

Defendants have moved to dismiss this claim, without prejudice, for failure to exhaust administrative remedies. ERISA requires that a claimant must available himself or herself of a plan's own internal review procedure before filing suit in federal court. *Diaz v. United Agricultural Employee Welfare Benefit Plan and Trust*, 50 F. 3d 1478, 1483 (9th Cir. 1995). It is undisputed that plaintiff did not apply for LTD benefits until after this suit was filed, and that she has not as yet appealed the denial of her application. The Court ruled earlier that plaintiff had not demonstrated that exhaustion of the claim was either impossible or futile. Order on Motion for Partial Summary Judgment, Dkt. # 64, p. 4. The Court finds in plaintiff's opposition no basis for reconsideration or amendment of that ruling. Accordingly, defendants' motion for summary judgment on this claim shall be granted, and the claim dismissed without prejudice, for failure to exhaust her remedies under the LTD plan.

## CONCLUSION

As set forth, defendants' motion for summary judgment is GRANTED as to all claims, and this action is hereby DISMISSED. As to plaintiff's ERISA claim for denial of benefits, this dismissal is without prejudice.

The Clerk shall enter judgment in favor of defendants.

DATED this 15 Day of May 2007.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 15